UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HERN FAMILY LIMITED | § | |
| PARTNERSHIP AND MONTREUX | § | |
| INVESTMENTS, INC. | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | Civ. No. 4:11-cv-00360 |
| V. | § | |
| | § | |
| COMPASS BANK, DBA BBVA | § | |
| COMPASS BANK, | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Compass Bank's Motion for Summary Judgment ("Motion"). (Doc. No. 33.) The Court has considered the Motion, all responses and replies thereto, supplemental briefing, and the applicable law. For the reasons explained below, the Court concludes that the Motion should be **GRANTED.**

**I. BACKGROUND**

Plaintiff Hern Family Limited Partnership ("Hern") is a Texas limited partnership that has its principal office in Harris County, Texas. (Doc. No. 6, Amended Compl. ¶ 2.) Plaintiff Montreux Investments, Inc. ("Montreux") is a Texas corporation that also has its principal office in Harris County. (*Id.*) Hern and Montreux (hereinafter, collectively "Plaintiffs") allege that on or about February 12, 2008, Packery Commercial Development, LP ("Packery"), a Texas limited partnership, executed and delivered to Texas State Bank, in connection with a commercial line of credit, a promissory note in the original principal sum of $5,107,500 ("Note") and a Deed of Trust. (*Id.* ¶ 6.) Packery's 9.118 acre undeveloped tract of land, situated in Neuces County, Texas

1

("Land"), was given to secure the Note. (*Id.*) On that date, Plaintiffs claim, Packery entered into a written Loan Agreement ("Loan") and Construction Advance Agreement as requested by Texas State Bank, the purpose of which was to acquire and develop the Land. (*Id.*) According to Plaintiffs, Texas State Bank was thereafter acquired by BBVA Compass Bank ("Compass" or "Defendant"). (*Id.*)

Plaintiffs aver that on or about July 13, 2009, Gary Wilson ("Wilson"), an officer of Defendant, committed to writing that Defendant would renew the Loan and make an additional advance of at least $625,000 to Packery for the express purpose of completing the Land's infrastructure. (*Id.* ¶ 7.) Wilson's written promise, Plaintiffs explain, made payment of interest due as a condition of renewal of the Loan. (*Id.*) At the time Wilson made the written promise, Plaintiffs insist, he was aware of the project's feasibility, in that he knew Hern had the financial wherewithal to contribute additional funds to Packery to complete the project. (*Id.*) Moreover, Plaintiffs contend, Wilson had personal knowledge that Packery's limited partner Hern would be making the interest payment to Defendant to renew the Loan. (*Id.*)

According to Plaintiffs, Montreux advanced funds in the sum of $55,236.71 to Defendant in reliance on Wilson's written and oral representations that Packery's commercial line of credit would be renewed and further advances would be made under the Loan. (*Id.* ¶ 8.) The $55,236.71, Plaintiffs explain, was voluntarily advanced as payment for accrued interest on the Loan. (*Id.*) After Defendant accepted Montreux's advance, however, Defendant allegedly refused to honor its commitment to renew the Loan and make further advances. (*Id.*) In further reliance upon Wilson's promise, Plaintiffs aver, Montreux advanced $14,763.29 to Packery as additional consideration for

Montreux's becoming a limited partner of Packery. (*Id.*) At the time Montreux made these monetary advances, Plaintiffs contend, it had not become a limited partner of Packery. (*Id.*) This is because Packery had not yet obtained the written approval of all of the limited partners to admit Montreux, as required by the Packery partnership agreement. (*Id.*) Plaintiffs insist that Montreux would not have paid the $55,236.71 to Defendant or the $14,763.29 to Packery but for Defendant's promise to renew the Loan and make further advances. (*Id.* ¶ 9.) Instead, Plaintiffs allege, Defendant foreclosed on the Loan, destroying more than two million dollars in equity. (*Id.*)

Plaintiffs insist that Wilson had personal knowledge that the payment made by Montreux was intended for the benefit of Hern; that Montreux was created for the purpose of making the interest payment to Defendant; and that Montreux would become a new limited partner of Packery. (*Id.* ¶ 10.) To make matters worse, Plaintiffs contend, Hern lost its entire equity investment of $250,000 due to the Defendant's wrongful acts. (*Id.* ¶ 11.) According to Plaintiffs, the economic damages to Montreux and Hern were foreseeable to Defendant. (*Id.*) Nevertheless, Plaintiffs complain, Defendant acted with intent to defraud Montreux of its money and in reckless disregard of Montreux's rights. (*Id.*) Plaintiffs allege that their actual damages amount to $320,000, and their consequential damages equal at least $200,000. (*Id.*) Plaintiffs filed this lawsuit, bringing claims against Defendant for breach of contract, as third-party beneficiaries, for fraud, for fraud in the inducement, for promissory estoppel, and for negligent misrepresentation. (*Id.* ¶¶ 12-17.)

Defendant thereafter filed a Motion to Dismiss. (Doc. No. 11.) In its Motion, Defendant argues that Plaintiffs fail to state a claim for the following reasons: (1)

Plaintiffs' claims in their Amended Compalint are derivative of alleged injuries to Packery, and as alleged limited partners of Packery they have no standing or legal capacity to sue; (2) even if a limited partner of Packery had the requisite standing and legal capacity, Plaintiff Montreux cannot recover as a limited partner of Packery, because it was in fact not a limited partner of Packery at the time Defendant's relevant conduct occurred; (3) Plaintiffs cannot recover on any claim due to the Statute of Frauds contained in § 26.02 of the Texas Business & Commerce Code; (4) the economic loss rule bars Plaintiffs' tort claims; (5) Plaintiffs cannot recover on their breach of contract, fraud, fraud in the inducement, negligent representation, or promissory estoppel claims because the alleged written agreement that Plaintiffs rely on was between Defendant and Packery, and not with either of Plaintiffs; (6) Plaintiffs cannot satisfy the elements necessary for promissory estoppel recovery; and (7) Plaintiffs are not third-party beneficiaries who Texas law recognizes as entitled to recover for breach of any agreement between Defendant and Packery. (Doc. No. 11, Mot. Dismiss ¶ 7.) Defendant utilized extrinsic evidence in its Motion to Dismiss, and Plaintiffs cited to extrinsic evidence in their response. As such, the Court issued an order converting the Motion to Dismiss into a Motion for Summary Judgment. (Doc. No. 20.) Both parties submitted additional briefing on the Motion for Summary Judgment.

## II. LEGAL STANDARD

To grant summary judgment, the Court must find that the pleadings and evidence show that no genuine issue of material fact exists, and therefore the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party

need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

### III. ANALYSIS

The Court finds that summary judgment against Plaintiffs is appropriate because Plaintiffs' claims are owned by the bankruptcy estate. Even if the bankruptcy estate did not own the claims, however, Plaintiffs' claims would not survive the Motion for Summary Judgment. The breach of contract and third-party beneficiary claims are precluded by the Statute of Frauds. These claims must also fail because the evidence is insufficient for Plaintiffs to overcome the presumption that the parties to the alleged contract—Packery and Defendant—were contracting for themselves. There is no genuine issue of material fact as to the remaining tort claims, as the evidence shows that Plaintiffs were not justified in acting in reliance upon the July Email. There is no genuine issue of material fact as to Plaintiffs' fraud claim because there is no evidence that Defendant intended to deceive them or did not intend to perform, or that Defendant made any statements recklessly or without knowledge of their truth or falsity. Plaintiffs' fraudulent inducement claim must fail because there was no binding agreement. Plaintiffs cannot prevail on their promissory estoppel claim because there was no promise to sign a particular existing written agreement. As to Plaintiffs' negligent misrepresentation claim, there is no genuine issue of material fact that Defendant supplied false information;

furthermore, Defendant's alleged promise was to act or not act in the future. For all of these reasons, the Court must grant Defendant's Motion.

### A. Ownership of Claims by Bankruptcy Estate

Defendant argues that Plaintiffs have no standing to bring their claims because they belong to Packery's bankruptcy trustee. (Doc. No. 33, Def.'s Brief in Support of Summ. Jgmt ¶ 27.) According to Defendant, Plaintiffs have no legal interest in the partnership property of Packery, including its claims. (*Id.* ¶ 28.) Moreover, Defendant contends, Plaintiffs' claims are the same as Packery's. (*Id.* ¶ 29.) Defendant points out that Plaintiffs' claims arise from a July 13, 2009 email ("July Email"), sent by Wilson to Craig Guidry ("Guidry"), Packery's general partner, that provides as follows:

> It is our intention to renew the current credit facility and advance additional funds in the amount of $625,000.00, to be used for infrastructure improvements to the subject property. The new credit facility can not be put together until the present facility is renewed and all interest brought current.

(Ex. 1 to Def.'s Briefing on Mot. Summ. Jgmt, July Email.) Wilson sent the email at the request of Ellis Tudzin ("Tudzin"), representative of Hern and Montreux, after a telephone conversation between Wilson, Guidry, and Tudzin on July 13. (Doc. No. 34, Def.'s Briefing on Mot. Summ. Jgmt ¶¶ 4-5; Pl.'s Resp. to Mot. Summ. Jgmt ¶ 8.) In that phone conversation, Wilson confirmed Defendant's intent to put together a new or revised credit facility. (Def.'s Briefing on Mot. Summ. Jgmt ¶ 5; Pl.'s Resp. to Mot. Summ. Jgmt ¶ 8.) Therefore, Defendant contends, the claims are based on Packery's failure to obtain a new loan arrangement from Defendant, and their allegations that Defendant breached legal duties in failing to make a new loan arrangement with Packery.

(*Id.*) Indeed, Defendant points out, Packery filed suit against Defendant in December 2009 in Texas State Court, asserting that Defendant had breached its contract to renew and extend the Loan, and advance $625,000. (*Id.*) Accordingly, Defendant asserts, Plaintiffs' claims belong to the bankruptcy trustee. (*Id.* ¶ 32 (citing 11 U.S.C.A. § 541(a)(1) (West 2011); *In re Educators Group Health Trust*, 25 F.3d 1281, 1283-84 (5th Cir. 1994)).)

Plaintiffs disagree with Defendant's characterization of their claims. (Pl.'s Resp. to Mot. Summ. Jgmt ¶¶ 21-24.) According to Plaintiffs, they are not asserting any claim that involves the property of the ongoing Packery bankruptcy estate. (*Id.* ¶ 21.) In fact, Plaintiffs emphasize, Montreux was not a limited partner of Packery at the time the alleged promises and inducements were made. (*Id.* ¶ 22.) Although they cannot "assert a claim for the entire equity lost by" Packery, Plaintiffs contend, they may bring claims for the money paid by Montreux, as well as consequential damages that were foreseeable to Defendant. (*Id.* ¶ 23.) Those damages allegedly include Hern's loss of its investment, as Wilson acknowledged that Hern was the intended beneficiary. (*Id.*)

The Bankruptcy Code provides that, with few exceptions, a bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "'[T]he term all legal and equitable interests of the debtor in property is all-encompassing and includes rights of action as bestowed by either federal or state law.'" *In re Moore*, 608 F.3d 253, 257-58 (5th Cir. 2010) (quoting *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d 1142, 1149 (5th Cir. 1987)). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Matter of Educators*

*Group Health Trust*, 25 F.3d at 1284 (citing *In re S.I. Acquisition*, 817 F.2d at 1153-54 (observing that the "general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly" requires that the trustee have the first opportunity to pursue estate actions without interference from individual creditors); *In re E.F. Hutton Southwest Properties II, Ltd. (In re Hutton)*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate.")). "If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action." *Id.* (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 433-34, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972) (holding that a trustee does not have standing to sue a third-party on behalf of debenture holders); *In re Rare Coin Galleries of Am., Inc.*, 862 F.2d 896, 900 (1st Cir. 1988) ("The trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.")).

"Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case." *Id.* (citing *In re S.I. Acquisition*, 817 F.2d at 1142 (examining the cause of action premised on alter ego under Texas law); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (examining the causes of action based on the Fraudulent Transfers Act and "denuding the corporation" theory under Texas law)). In making its assessment, this Court should consider the nature of the injury for which Plaintiffs seek relief. *Id.* (citing *In re Hutton*, 103 B.R. at 812 ("The injury characterization analysis should be considered as an inseparable component of

whether an action belongs to the [estate] or individual [creditor].")). If the Plaintiffs'
claims allege only indirect harm to a creditor (in other words, "an injury which derives
from harm to" Packery), and Packery could have raised a claim for its direct injury under
the applicable law, then the cause of action belongs to Packery's estate. *Id.* (citing *In re
S.I. Acquisition, Inc.*, 817 F.2d at 1152-53 (concluding that an action based upon alter ego
properly belongs to the estate, where (1) the debtor could have pierced its own corporate
veil under Texas law; and (2) the debtor was unable to meet its corporate obligations due
to the misuse of the corporate form, causing a derivative injury to the individual creditor);
*MortgageAmerica*, 714 F.2d at 1275 (concluding that an action under the Fraudulent
Transfers Act properly belongs to the estate, where (1) the debtor could have brought the
action to recover its assets; and (2) the debtor is stripped of assets, causing a derivative
injury to the individual creditor)). *See also In re Enron Corp. Securities, Derivative, &
"ERISA" Litigation (In re Enron)*, No. MDL-1446, 2007 WL 789141, at *6 (S.D. Tex.
March 12, 2007) ("To determine whether the claim belongs to the bankruptcy estate, the
court must examine whether, under state law, the debtor could have asserted the cause of
action at the commencement of the bankruptcy proceedings; in the process the court must
also consider the nature of the injury alleged, i.e., whether the claim is direct or derivative
to the plaintiff." (citing *In re Educators Group Health Trust*, 25 F.3d at 1284)); *In re
Kevco, Inc.*, 113 Fed.Appx. 29, 30 (5th Cir. 2004) (unpublished) ("If the plaintiff
complains about an injury which derives from harm to the debtor, and the debtor could
have raised a claim for its direct injury, then the cause of action belongs to the estate."
(citing *In re Educators Group Health Trust*, 25 F.3d at 1284)). Importantly, "it is entirely
possible for a bankruptcy estate and creditor to own separate claims against a third party

arising out of the same general series of events and broad course of conduct." *In re Seven Seas Petroleum Inc.*, 522 F.3d 575, 585 (5th Cir. 2008).

The Court agrees that Plaintiffs' claims belong to the bankruptcy estate. Defendant allegedly breached its agreement with Packery; therefore, "the initial injury in this case was a direct injury to" Packery. *In re Andrews*, No. 94-21308, 2007 WL 596706, at *3 (Bkrpcy S.D. Tex. Feb. 21, 2007). Plaintiffs bring claims for injuries due to Defendant's alleged breach of its contract *with Packery*; as such, Plaintiffs were "only injured in this case as an indirect result of" the alleged breach of the agreement. *Id.* As such, Plaintiffs' "injuries are secondary to the injuries sustained by" Packery. *Id.* With regard to the fraud, fraudulent inducement, and negligent misrepresentation claims, Plaintiffs do not allege—and the record does not support—that Defendant "made any false statements or misrepresentations ... *to them*, as opposed to" Packery. *Don Hanvey Oil Trust, Inc. v. Unit Texas Drilling, LLC*, No. C-10-202, 2011 WL 606264, at *9 (S.D. Tex. Feb. 16, 2011). Indeed, Plaintiffs "seek to redress the same injur[ies]" and "make the same underlying allegations" as those that could be asserted by the bankruptcy estate; therefore, "[n]o amount of artful pleading will disguise that they are the same claims, properly settled by the Bankruptcy Estate." *Id.* at *10. In other words, the Packery trustee could have brought the same claims as of the commencement of the bankruptcy estate, and Plaintiffs complain about injuries that are derivative of Packery's injuries. *In re Kevco*, 113 Fed.Appx. at 30-31.

For example, a district court in the Southern District of California found that a managing member's claims were owned by the estate of the debtor, a limited liability corporation. *In re Real Marketing Services, LLC*, 309 B.R. 783, 785 (S.D. Cal. 2004). In

that case, the debtor had entered into a term sheet with the defendant stating that the defendant would purchase the debtor's assets. *Id.* The term sheet identified debt that debtor owed to the managing member, and stated that the defendant would assume the debt as part of the purchase price. *Id.* The court concluded that any damage to the managing member derived from the debtor's damages—indeed, when the defendant allegedly breached the contract, the debtor received no sale proceeds and, accordingly, neither did the managing member. The court explained that "any benefit [the managing member] would have received … would have derived from [the debtor's] benefit." *Id.* at 790. As such, the managing member's breach of contract and debt assumption claims were owned by the bankruptcy estate. The court also found that the managing member's misrepresentation claims were owned by the bankruptcy estate, as the debtor "also detrimentally relied on [defendant]'s alleged promise to extinguish the debt and promise to repay." *Id.* at 791. As Plaintiffs observe, the facts in *In re Marketing Services, LLC* differ from the case before this Court in that Plaintiffs provided money to Defendant, rather than to Packery. Nonetheless, as in *In re Marketing Services*, any benefit to Plaintiffs would have derived from Packery's benefit. Moreover, Packery also detrimentally relied on Defendant's alleged promise to pay. For these reasons, Defendant is entitled to summary judgment as to all of Plaintiffs' claims.

### B. Statute of Frauds

Under Texas law, a loan agreement in which the amount involved exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by the party's authorized representative. Tex. Bus. & Com. Code Ann. § 26.02(b). The Statute of Frauds does not require, however, that the contract be in

writing; rather, "the written instrument merely furnishes written evidence of a contract and its essential terms." *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 167 (Tex.App.-Austin 1996, no writ) (citing *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263 267 (Tex.App.-Corpus Christi 1994, writ denied)). The Statute of Frauds does demand that "the written agreement or memorandum … be complete within itself in every material detail and … contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resort to oral testimony." *Id.* (citing *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)). Likewise, "a modification to a contract need not restate all the essential terms of the original agreement." *BACM 2001-1 San Felipe Road Ltd. Partnership v. Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 145-46 (Tex.App.-Houston [14 Dist.] 2007, pet. denied). "A modification alters only those terms of the original agreement to which it refers, leaving intact those unmentioned portions of the original agreement that are not inconsistent with the modification." *Id.* at 146 (citing *Boundreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547-48 (Tex.App.-Houston [1st Dist.] 1994, no writ)).

Even if the July Email constituted a contract, Defendant argues, it does not satisfy the Statute of Frauds. (Def.'s Briefing on Mot. Summ. Jgmt ¶¶ 52-59.) According to Defendant, the alleged agreement is unenforceable because it fails to state: the applicable interest rate, the term or maturity date, whether the payments would include both principal and interest, whether a third party would verify construction draws, and whether the Packery partners would replace the present guarantor. (*Id.* ¶ 57.) Indeed, Defendant points out, the July Email refers to two credit facilities: a current credit facility, which had been renewed twice, and the new credit facility, of which the only known term was

allegedly its principal amount—the outstanding loan balance plus the anticipated $625,000. (*Id.* ¶ 56.) Defendant insists that "[t]he form of the new credit facility was not known: whether it would be one loan for both the purchase and construction advancement (as was the original loan) or whether it would be two loans." (*Id.* (citing Wilson Dep. 116:2-117:14, 118:1-18, 119:19-120:7, 121:17-23).)

Plaintiffs believe that the July Email does not violate the Statute of Frauds because it refers to other documents. (Pl.'s Resp. to Mot. Summ. Jgmt ¶ 26.) Specifically, Plaintiffs contend that the July Email refers to the "current credit facility," which consists of specific, identifiable documents, namely: the June 30, 2009 Modification and Rearrangement Agreement and Extension Agreement executed by the Defendant and Packery, and additionally the "Loan Documents" incorporated therein. (*Id.*) According to Plaintiffs, there is nothing ambiguous about the words in the July Email. (*Id.* ¶ 27.) Plaintiffs insist that the word "renew" clearly means to continue in force the old contract. (*Id.*) Moreover, Plaintiffs assert, the phrase "credit facility" is defined in the first paragraph of the Loan Agreement as "the funds advanced by the Bank as evidenced by the Loan Agreement, Promissory Note and the collateral securing the Note." (*Id.*) As a result, Plaintiffs aver, "all the essential terms and conditions required to be identified in a commercial real estate loan transaction are spelled out in the Modification and Rearrangement Agreement and the other loan documents, which documents are specifically referenced in the Modification and Rearrangement Agreement." (*Id.*) Additionally, Plaintiffs argue that the doctrine of partial performance renders the Statute of Frauds inapplicable. (*Id.* ¶¶ 54-57.)

"In a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) (citing *Wheeler v. White*, 398 S.W.2d 93, 95 (Tex. 1965); *Pine v. Gibraltar Savings Assn.*, 519 S.W.2d 238, 243-44 (Tex. Civ. App. –Houston [1st Dist.] 1974, writ ref'd n.r.e.); *accord Stansel v. Am. Sec. Bank*, 547 A.2d 990, 993 (D.C. App. 1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989); *Chapaign Nat'l Bank v. Landers Seed Co., Inc.*, 165 Ill.App.3d 1090, 116 Ill.Dec. 742, 745, 519 N.E.2d 957, 960 (1988), *cert. denied*, 489 U.S. 1019, 103 L.Ed.2d 199 (1989); *McErlean v. Union Nat'l Bank of Chicago*, 90 Ill.App.3d 1141, 46 Ill.Dec. 406, 410, 414 N.E.2d 128, 132 (1980)). The Court agrees with Defendant that the July Email lacks all material terms except the principal amount. Indeed, Defendant would not have chosen the same maturity date as that in the Loan, which had passed more than eight months before the July Email was sent; furthermore, it is unlikely that Defendant would have chosen the same interest rate when Packery had already defaulted on the Loan. The July Email is simply not complete in itself, such that the alleged contract could be ascertained without resort to oral testimony.

Moreover, under these circumstances, there is no exception to the Statute of Frauds due to partial performance. "Under the partial performance equitable exception, an oral agreement that does not satisfy the traditional statute of frauds but that has been partially performed may be enforced if denying enforcement would itself amount to a fraud." *Bank of Texas, N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex.App.-Dallas 2009, pet. dism'd w.o.j.) (citing *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex.App.-

Dallas 2002, pet. denied); *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex.App.-Dallas 1985, no writ)). Importantly, "[t]he actions asserted to constitute partial performance must be 'unequivocaly referable' to the alleged oral agreement and corroborate the existence of that agreement; they 'must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied upon by the plaintiff.'" *Id.* (citing *Breezevale*, 82 S.W.3d at 439-40); *see also Teague v. Roper*, 526 S.W.2d 291, 293 (Tex.App.-Amarillo 1975, reh. denied). Plaintiffs' actions could have been intended to pay the already existing debt that Packery owed Defendant. *See, e.g., Rodriguez v. Klein*, 960 S.W.2d 179, 186 (Tex.App.-Corpus Christi 1997, no pet.) (finding no partial performance because plaintiff's action—the surrender of his business—was required under either (1) the bill of sale, (2) the alleged oral contract or (3) the original agreement between the parties). Therefore, the partial performance exception does not apply, and the Statute of Frauds precludes Plaintiffs' contract claims.

### C. Breach of Contract and Third-Party Beneficiary Claims

Plaintiffs allege that Defendant materially breached the agreement Wilson made to renew the Loan and make further advances, in consideration of Montreux's $55,236.71 payment to the Defendant. (Am. Compl. ¶ 12.) According to Plaintiffs, these material breaches caused substantial, foreseeable economic harm to them. (*Id.*) Plaintiffs claim that they were denied the benefit of the bargain of their contract, as they had performed all conditions and covenants required of them pursuant to the agreement between Montreux and Defendant for the benefit of Montreux and Hern. (*Id.*) All conditions to their right to recover, Plaintiffs aver, had occurred or had been fulfilled. (*Id.*) Moreover,

Plaintiffs contend, Defendant materially breached its agreement with Montreux by taking Montreux's money and by breaching its promise to Montreux that the Loan would be renewed and further advances made under the Loan. (*Id.*) As a consequence, Plaintiffs insist that they suffered economic damages of at least $600,000. (*Id.*)

Plaintiffs' breach of contract claim is precluded by the Statute of Frauds. Additionally, however, Plaintiffs' breach of contract claim fails because the contract was between Packery and Defendant, rather than between Plaintiffs and Defendant. Plaintiffs seek to escape this issue by asserting that they were third-party beneficiaries to the July Email. According to Plaintiffs, they were the intended beneficiaries of Defendant's agreement to renew the Loan. (Am. Compl. ¶ 13.) Plaintiffs aver that "Wilson was made aware that the interest payment to the Bank and payment of consideration to PCD were done for the express and intended benefit of Plaintiffs, including, but not being limited to, protecting HFLP's investment in the Land and to see the development of the Land continue to completion." (*Id.*) Plaintiffs point to a recent case from the Texas Supreme Court, *Basic Capital Management, Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894 (Tex. 2011), where the Court held that plaintiffs were third-party beneficiaries even though they were not specifically mentioned in the contract. Plaintiffs argue that *Basic Capital Management* stands for the proposition that the July Email need not have explicitly mentioned Plaintiffs for them to have been third-party beneficiaries. (Pl.'s Brief in Resp. to Mot. Summ. Jgmt ¶ 59.)

*Basic Capital Management*, however, is distinguishable from this case. In *Basic Capital Management*, two real estate investment trusts sought financing from Dynex Commercial, Inc. *Id.* at 896. Dynex Commercial often required that real estate investment

trusts form "single-asset, bankruptcy-remote entities" (known as SABREs) to be the borrowers, as collateral could be more easily recovered from them. *Id.* Dynex Commercial agreed to loan money to three SABREs owned by the real estate investment trusts. *Id.* at 897. When the loan agreement became unprofitable for Dynex Commercial, however, it refused to loan the SABREs money. *Id.* The Texas Supreme Court held that the real estate investment trusts were third-party beneficiaries of the agreement. The Court noted that, "[a]s a practical matter, the parties knew that it would likely not be a SABRE that would enforce" the agreement. *Id.* at 899. Indeed, the Court observed, the parties were aware that, by its very nature, the SABRE would not be created until an investment opportunity presented itself, and without financing, there would be no investment. *Id.* Furthermore, the Court recognized, the transaction was structured so as to benefit Dynex Commercial. *Id.* As such, the Court opined, the agreement "clearly and fully spelled out" the benefit to plaintiffs because "their role was basic" to the agreement. *Id.* at 901.

"A third party may recover on a contract made between other parties if the parties (1) intended to secure a benefit to that third party and (2) entered into the contract directly for the third party's benefit." *EOG Resources, Inc. v. Hurt*, 357 S.W.3d 144, 148 (Tex.App.-Fort Worth 2011) (citing *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006); *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)). "To qualify as an intended third-party beneficiary, a party must show that she is either a 'donee' or 'creditor' beneficiary of the contract." *Basic Capital Management, Inc.*, 348 S.W.3d at 901 (citing *Stine*, 80 S.W. at 589) (footnote omitted). As the *Basic Capital Management* Court acknowledged, "'a presumption exists that parties contracted for themselves unless

it clearly appears that they intended a third party to benefit from the contract.'" *Id.* at 900

(quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.

1999) (citations and internal quotation marks omitted)). A court cannot "'create a third

party beneficiary contract by implication'" and "'[t]he intention to contract or confer a

direct benefit to a third party must be clearly and fully spelled out or enforcement by the

third party must be denied.'" *Id.* (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

Accordingly, the Court explained: "'The fact that a person might receive an incidental

benefit from a contract to which he is not a party does not give that person a right of

action to enforce the contract. A third party may recover on a contract made between

other parties only if the parties intended to secure some benefit to that third party, and

only if the contracting parties entered into the contract directly for the third party's

benefit.'" *Id.* at 899-900 (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

There is no evidence in the record to support Plaintiffs' assertion that they were

third-party beneficiaries. Although Plaintiffs may have incidentally benefited from the

contract, the intent to benefit Plaintiffs is not clearly and fully spelled out. Unlike in

*Basic Capital Management*, the contract was not structured for the exclusive benefit of

Defendant, and Plaintiffs' role was not basic to the agreement. *See also Sharyland Water

Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011) ("Sharyland does not

meet the criteria necessary to confer third party beneficiary status. Sharyland is neither

mentioned in the contracts themselves, nor is there evidence that … [the contracting

parties] intended to confer a direct benefit on Sharyland…. The primary purpose of these

agreements was to provide for the construction of a sewer system in Alton, not to benefit

Sharyland.").  Therefore, Plaintiffs cannot overcome the presumption that Defendant and Packery contracted for themselves.

Plaintiffs further contend that there is sufficient evidence of a unilateral contract, a constructive, or implied-in-fact, contract, and an implied-in-law contract. (Pl.'s Supp. Resp. to Mot. Summ. Jgmt ¶¶ 7-8.) Specifically, Plaintiffs claim that the unilateral contract is evidenced by the telephone conversation among Wilson, Tudzin, and Guidry, followed by Tudzin's July 13, 2009 letter to Wilson. (*Id.* ¶ 7.) An implied-in-fact contract, Plaintiffs aver, was formed by the acts and conduct of Defendant and Montreux with regard to Defendant's acceptance of Montreux's payment of Packery's interest in return for Defendant's promise to renew the Loan and make the $625,000 advance. (*Id.* ¶ 8.) Plaintiffs, however, do not plead any of these facts in their Amended Complaint. Rather, Plaintiffs' breach of contract claim appears to be premised exclusively on the July Email. Plaintiffs do mention their reliance on "Wilson's written and oral representations that PCD's commercial line of credit would be renewed, and further advances would be made under the loan." (Am. Compl. ¶ 8.) Yet the Amended Complaint does not describe what these oral representations were or clarify that they were made to Plaintiffs, as opposed to Packery. There is no evidence in the record to support Plaintiffs' assertion that the content of the July 13 discussion between Wilson, Tudzin, and Guidry, or even the surrounding acts by the parties, gives rise to a unilateral contract or an implied-in-fact contract. Specifically, there are no facts pleaded, or evidence in the record, supporting Plaintiffs' contention that there was an oral offer that could be the basis of a unilateral contract. Nor is there an implication, from the acts and conduct of the parties, that there was a mutual intention to contract. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 5438, 557

(Tex.App.-Houston [14 Dist.] 2002, no pet.) (citing *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)).

Additionally, Plaintiffs insist that an implied-in-law contract emerges because Defendant was unjustly enriched at the expense of Montreux, as Defendant was paid money it would not have received but for Wilson's representations in the July Email. (Pl.'s Supp. Resp. to Mot. Summ. Jgmt ¶ 9.) "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex.App.-San Antonio 2004, pet. denied) (citing *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex.App.-Fort Worth 1994, writ denied)). "Unjust enrichment occurs when the 'person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain.'" *Id.* (quoting *City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex.App.-Corpus Christi 1987, writ denied)). "Unjust enrichment characterizes the result or failure to make restitution of benefits received under such circumstances as to give rise to an implied or quasi-contract to repay." *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyer Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex.App.-Dallas 2009, pet. denied) (citing *Villarreal*, 136 S.W.3d at 270). An implied-in-law contract "is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (quotations omitted). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41

(Tex. 1992) (citing *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 560, 562 (1948); *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex.App.-Austin 1987, writ denied)).

Unjust enrichment "is not a proper remedy 'merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall'"; rather, "[t]he profit must be 'unjust' under principles of equity." *Casstevens v. Smith*, 269 S.W.3d 222, 229-30 (Tex.App.-Texarkana 2008, pet. denied) (quoting *City of Corpus Christi v. Heldenfels Bros., Inc.*, 802 S.W.2d 35, 40 (Tex.App.-Corpus Christi 1990), *aff'd*, 832 S.W.2d 39 (Tex. 1992), and citing *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App.-Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998)). Although Plaintiffs' situation is unfortunate, "[t]he doctrine does not operate to rescue a party from the consequences of a bad bargain." *Burlington Northern R. Co. v. Southwestern Elec. PowerCo.*, 925 S.W.2d 92, 97 (Tex.App.-Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex.1998) (citing 42 C.J.S. Implied and Constructive Contracts § 5; *Harris v. Sentry Title Co.*, 715 F.2d 941, 949 (5th Cir. 1983)). As such, summary judgment is appropriate as to Plaintiffs' breach of contract and third-party beneficiary claims.

### D. Fraud and Fraud in the Inducement

To prove common law fraud, a plaintiff must show that: (1) a material misrepresentation was made; (2) the misrepresentation was false; (3) when the speaker made it, he or she knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the material misrepresentation with

the intention that the other party act upon it; (5) the other party acted in reliance upon it; and (6) other the party thereby suffered injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (quoting *Wilson v. Jones*, 45 S.W.2d 572, 574 (Tex.Comm.App. 1932, holding app'd)). "[A] person who makes a misrepresentation is liable to the person or class of persons the maker intends or 'has reason to expect' will act in reliance upon the misrepresentation." *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (quoting Restatement (Second) of Torts § 531 (1977)). This "reason-to-expect standard" requires "a degree of certainty that goes beyond mere foreseeability." *Id.* at 578-79. As the Texas Supreme Court has explained,

> [t]he maker of the misrepresentation *must have information* that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons and will influence their conduct. There must be something in the situation *known to the maker* that would lead a reasonable man to govern his conduct on the assumption that this will occur. *If he has the information*, the maker is subject to liability under the rule stated here.

*Id.* at 581 (quoting Restatement (Second) of Torts § 531 cmt. d (1977)).

A promise to do an act in the future is not actionable fraud unless it is "made with the intention, design, and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (citing *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971); *Turner v. Biscoe*, 141 Tex. 197, 199, 171 S.W.2d 118, 119 (Tex.Comm'n App. 1943, opinion adopted)). "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." *Id.* (citing *Chicago, T. & M.C. Ry. Co. v. Titterington*, 84 Tex. 218, 223 19 S.W. 472, 474 (1982); *Smith v. Jungkind*,

252 S.W.2d 596, 599 (Tex.Civ.App.-Austin 1952, writ ref'd)). "Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." *Id.* at 435. Plaintiffs have presented no evidence that Defendant intended to deceive them or did not intend to perform. Indeed, the evidence shows that Wilson and Hastings made every effort to renew the loan and extend the $625,000. (Hastings Dep. 63:21-64:3, 72:19-73:24, 77:7-78:11, 169:20-174:9; Wilson Dep. 187:2-188:13, 198:4-200:25.) Additionally, there is no evidence that Defendant made any statements recklessly, or without any knowledge of their truth or falsity. Therefore, there is no genuine issue of material fact as to Plaintiffs' fraud claim.

Significantly, Plaintiffs cannot show fraudulent inducement in the absence of a binding agreement. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). In other words, there is no breach of the "'duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations'" if the plaintiff "is not induced into a contract." *Id.* (quoting *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)). This is because fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Id.* As any alleged contract in this case is barred by the Statute of Frauds, Plaintiffs cannot show a genuine issue of material fact as to their fraudulent inducement claim. *Id.* at 799 ("We therefore hold that the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the  Statute of Frauds.").

Furthermore, Plaintiffs' fraud claims must fail because Plaintiffs did not "actually and justifiably rel[y] on the misrepresentation." *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex.App.-Houston [14 Dist.] 2003, pet. denied) (citing *Ernst & Young, L.L.P.*, 51 S.W.3d at 577; Restatement (Second) of Torts § 537 (1977)). "In this regard, a party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party." *Id.* (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). "Even an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard; rather, the alleged fraudfeasor must 'have information that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons *and will influence their conduct.*'" *Ernst & Young, L.L.P.*, 51 S.W.3d at 580 (citing Restatement (Second) of Torts § 531 (1977)). "In sum, the reason-to-expect standard requires more than mere foreseeability; the claimants' reliance must be 'especially likely' and justifiable, and the transaction sued upon must be the type the defendant contemplated." *Id.* The summary judgment record offers no evidence that a reasonable person would conclude there was an especial likelihood that the July Email would influence Plaintiffs' conduct. Rather, Plaintiffs' reliance on the July Email is not especially likely or justifiable. Therefore, the fraud claims must fail.

### E. Promissory Estoppel

To prevail on a claim for promissory estoppel, Plaintiffs must show a promise, foreseeability by the promisor that Plaintiffs would rely on the promise, substantial reliance by the Plaintiffs to their detriment, and that enforcing the promise is necessary to

avoid injustice. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14 Dist.] 1999, pet. denied) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)); *Collins v. Walker*, 341 S.W.3d 570, 573-74 (Tex.App.-Houston [14 Dist.] 2011, no pet.) (citing *Sipco Servs. Marine v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex.App.-Houston [1st Dist.] 1993, no writ)). "To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise." *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex.App.-Houston [14 Dist.] 2007, no pet.) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex.App.-Houston [1st Dist.] 2007, no pet. h.); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "Promissory estoppel does not create a contract where none existed before but prevents a party only from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *Maddox v. Vantage Energy, LLC*, --- S.W.3d ----, 2012 WL 407269, at *7 (Tex.App.-Fort Worth Feb. 9, 2012) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972)). "For promissory estoppel to create an exception to the statute of frauds requires a promise to sign a prepared written contract which would satisfy the requirements of the statute of frauds." *Carpenter v. Phelps*, --- S.W.3d ----, 2011 WL 1233312, at *4 (Tex.App.-Houston [1 Dist.] 2011, no pet.) (citing *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex.App.-Houston [14 Dist.] 1992, writ denied)). A promise to prepare a written contract is not enough; rather, "[t]he defendant must have promised to sign a particular existing written agreement." *Id.* (citing *Beta Drilling, Inc.*, 821 S.W.2d at 741).

In this case, there is no promise to sign a particular existing written agreement. Furthermore, it was not foreseeable to Defendant that Plaintiffs would have relied on the

July Email to their detriment—nor is it reasonable for them to have done so. Tudzin did

send a letter to Wilson *after* the July Email was sent informing him that, "[b]ased on our

discussion and your subsequent e-mail to Craig, Montreux will advance the amounts

necessary to fund interest due and owing to Compass Bank plus an amount to cover

future interest, or at least a portion thereof." (Ex. K to Pl.'s Briefing on Mot. Summ.

Jgmt, July 13, 2009 Letter from Tudzin to Wilson 1.) Additionally, it may have been

foreseeable to Wilson that Guidry would share the July Email with Tudzin. (Wilson Dep.

88:9-89:1.) Yet reliance on an alleged promise must be reasonable and the promise itself

definite, rather than a mere "vague assertion[] that no reasonable person would justifiably

rely upon." *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex.App.-San

Antonio 1998, no pet.) (quotations omitted). No reasonable person would justifiably rely

upon the July Email in deciding whether to make a significant monetary investment.

Therefore, Plaintiffs' fraud claims do not survive the Motion to Dismiss.

### F. Negligent Misrepresentation

Under Texas law, "'[o]ne who, in the course of his business, profession or

employment, or in any transaction in which he has a pecuniary interest, supplies false

information for the guidance of others in their business transactions, is subject to liability

for pecuniary loss caused to them by their justifiable reliance upon the information, if he

fails to exercise reasonable care or competence in obtaining or communicating the

information.'" *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 388

(Tex.App.-Houston [1 Dist.] 2010, pet. denied) (quoting *McCamish, Martin, Brown &

Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999)). Therefore, the

elements of a claim for relief for negligent misrepresentation are: (1) the representation

was made by a defendant in the course of business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). "The 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Roof Systems, Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex.App.-Houston [14 Dist.] 2004, no pet.) (citing *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14[th] Dist.] 1999, pet. denied)). "A promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim." *Id.* (citing *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 706 (Tex.App.-Houston [14[th] Dist.] 1998, pet. denied)).

To begin with, there is no genuine issue of material fact that Defendant supplied false information. Instead, it appears from the record before the Court that Defendant truthfully expressed its intention to take steps to renew the Loan and advance the $625,000. (Hastings Dep. 63:21-64:3, 72:19-73:24, 77:7-78:11, 169:20-174:9; Wilson Dep. 187:2-188:13, 198:4-200:25.) Moreover, Defendant's alleged promise was to act or not act in the future; therefore, it cannot form the basis of a negligent misrepresentation claim. Nonetheless, Plaintiffs insist that their negligent misrepresentation claim is viable because the misrepresentation claim regards an *existing* fact. Plaintiffs point to the case *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 166 (Tex.App.-Austin 1996, no writ), in which plaintiffs alleged that a bank never agreed to loan them money, but negligently

misrepresented that it would. For the reasons explained above, however, the Court believes that the July Email did not represent that Defendant was committing to renewing the Loan. Alternatively, Plaintiffs' reliance was not justifiable. Therefore, Plaintiffs' negligent misrepresentation claim does not survive the Motion for Summary Judgment.

### IV. CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment must be **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 26th day of March, 2012.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**